Argued and submitted June 4, reversed and remanded to circuit court June 26, 1986

OREGON EDUCATION ASSOCIATION et al,
*Petitioners on review,*

OREGON PUBLIC EMPLOYEES UNION,
LOCAL 503 et al,
*Petitioners (below),*

*v.*

ROBERTS et al,
*Respondents on review,*

*and*

BENDL et al,
*Respondents (below).*

(CC 152580; CA A35391; SC S32734)

721 P2d 833

Henry H. Drummonds, Portland, argued the cause for petitioners on review. On the brief were Paul B. Gamson and Kulongoski, Durham, Drummonds & Colombo, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response to the petition for review were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Arno H. Denecke and John DiLorenzo, Jr., of Moshofsky, DiLorenzo & Dietz, Portland, filed a brief *amicus curiae* on behalf of Oregon Taxpayers United.

JONES, J.

## JONES, J.

The issue in this case is whether the Secretary of State must determine an initiative petition's compliance with the Oregon Constitution, Article IV, section 1(2)(d), before the voters have adopted the proposed measure. Article IV, section 1(2)(d) requires:

"An initiative petition shall include the full text of the proposed law or amendment to the Constitution. *A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith.*" (Emphasis added.)

The initiative petition, which was filed with the Secretary of State on September 10, 1984, and approved by her on September 11, proposes that the Constitution be amended to "limit government employe remunerations to average private sector remunerations available for equivalent labor." The initiative also would affect "the use by government of contract services and part-time employes and * * * public employe pensions." *OEA v. Roberts,* 78 Or App 32, 34 n 3, 714 P2d 1060 (1986).[1]

Plaintiffs, Oregon Education Association, Oregon Public Employees Union, Sandy Ellis, Robert Cornell, D.H. Petry and Dave Grenbemer, contending that the initiative unconstitutionally contains more than one subject, brought this action in circuit court pursuant to ORS 246.910 to compel defendants Secretary of State and the Attorney General not to process the initiative petition and to prevent defendant sponsors, Ruth Bendl and Vernon White, from circulating the petition. The trial court ruled for the defendants, and the Court of Appeals affirmed. We reverse the Court of Appeals and hold that the Secretary of State must determine whether an initiative petition complies with the "one subject only" rule

---

[1] The proponents of the measure described it as follows:

"Proposed Constitutional Article seeks to establish fairness between public and private sectors by limiting bureaucracy pay and benefits to those found in the private sector for equivalent work. Creates Commission to Administer. Assures citizen right to challenge excessive remunerations. Freezes public wages found higher than private average. Requires contracting public services where-ever costlier than private. Permits public employees to choose between public and private pension plans. Requires reform of public pension plans found actuarially unsound."

of the Oregon Constitution, Article IV, section 1(2)(d), before the voters have adopted the proposed measure.

Before 1968 this court consistently held that courts could not consider constitutional challenges to initiative or referendum petitions before the voters adopted the measures. In *Johnson v. City of Astoria*, 227 Or 585, 593, 363 P2d 571 (1961), the court stated that "it is equally inadmissible to inquire into the constitutionality of a proposed initiative measure when the remedy sought is mandamus to compel submission of the measure as when the proceeding is by injunction to restrain its submission." *See also State ex rel. v. Newbry*, 189 Or 691, 693, 222 P2d 737 (1950). The constitutional provisions interpreted by the *Johnson* court were amended in 1968, so the question before us is whether those amendments changed the meaning of Article IV, section 1.

The current phrasing of Article IV, section 1(2)(d), unlike *former* Article IV, sections 1 and 1a, requires that "a *proposed* law or amendment to the Constitution" deal with one subject only. (Emphasis added.) Without referring to the legislative history of the 1968 amendment, we examine the amendment itself to interpret the second sentence of section 1(2)(d) containing the word "proposed." If the wording of the section is unambiguous, it is irrelevant what proponents of the measure contended that the effects of the measure would be. The plain wording will prevail over fragmented comments about it.

A "proposed law or amendment to the Constitution" refers to a measure not yet enacted by the people. The Constitution itself guides our interpretation of the word "proposed." Article IV, section 1(2)(a), provides:

"The people reserve to themselves the initiative power, which is to *propose* laws and amendments to the Constitution and *enact or reject them* at an election independently of the Legislative Assembly." (Emphasis added.)

This subsection distinguishes proposing a law from enacting or rejecting a law. The subsection shows that a proposed law is not an enacted law; voters could reject a proposed law rather than enact it. Because the word "propose" is used in subsection (2)(a), the word should have a similar meaning in subsection (2)(d). In the context of subsection (2)(d), a "proposed law" means a measure on which the people have not yet voted.

Subsection (2)(d) should be read to mean that a measure which has not yet been enacted by the people "shall embrace one subject only and matters properly connected therewith."

Reading subsection (2)(d) for its plain meaning, the word "shall," as in "*shall* embrace one subject only," limits the initiative power to those measures that contain one subject only. Such a limit would have little effect were it not enforced by the Secretary of State before the measure was enacted.

■    Article IV, section 1(4)(b), strengthens our interpretation that section 1(2)(d) allows pre-election review of the Secretary of State's decision to submit a measure to the voters. Section 1(4)(b) provides:

"Initiative and referendum measures shall be submitted to the people as provided in this section and by law not inconsistent therewith."

Subsection (4)(b) requires the Secretary of State to submit measures to the people in a form consistent with Article IV, section 1. Subsection (4)(b) refers to the process of submitting measures to the people, which occurs before enactment. Because subsection (2)(d) refers to unenacted measures proposed by petition, the unambiguous wording of subsection (2)(d) refers to pre-election review of measures. Therefore, based on the plain meaning of the word "proposed" in Article IV, section 1(2)(d), the Secretary of State must determine whether "proposed laws" contain one subject only.

After establishing that the Secretary of State's duty exists before a "proposed law" is voted on, the remaining question is the timing of pre-election review of the Secretary of State's action. We must determine at which stage in the process of submitting a "proposed law" to the voters the Secretary of State must decide whether the measure is sufficient under Article IV, section 1(2)(d).

The initiative process starts when the proponents of an initiative petition file the petition with the Secretary of State. ORS 250.045(1). ORS 250.045(1) provides:

"Before circulating a petition to initiate or refer a state measure under section 1, Article IV, Oregon Constitution, the petitioner shall file with the Secretary of State a prospective petition. The prospective petition for a state measure to be initiated shall contain a statement of sponsorship signed by at

least 25 electors. The signatures in the statement of sponsorship must be accompanied by a certificate of the county clerk of each county in which the electors who signed the statement reside, stating the number of signatures believed to be genuine. The Secretary of State shall date and time stamp the prospective petition and specify the form on which the petition shall be printed for circulation. The secretary shall retain the prospective petition."

The prospective petition must contain the text of the proposed measure, the names, signatures and mailing addresses of no more than three chief petitioners, a statement concerning whether petition circulators will be paid, and a statement of sponsorship signed by 25 electors. The 25 signatures must be verified by either the Secretary of State or the chief petitioners. "Approval by the Secretary of State is conditioned not only upon verification of the required number of sponsor signatures, but also upon determination that the use of the initiative power in each case is authorized by the Constitution." *State ex rel Fidanque v. Paulus,* 297 Or 711, 715 n 5, 688 P2d 1303 (1984).

Once the Secretary receives the prospective initiative petition, she must immediately send two copies of the petition for preparation of a ballot title. ORS 250.065(2). Subsection (2) provides that "[w]hen an approved prospective petition for a state measure to be initiated is filed with the Secretary of State, the secretary immediately shall send two copies of it to the Attorney General." The Attorney General then has five days to prepare a title, ORS 250.065(3). ORS 250.065(3) provides that

"Not later than the fifth business day after receiving copies of the prospective petition for a state measure to be initiated, the Attorney General shall provide a draft ballot title for the state measure to be initiated and return one copy of the prospective petition and the ballot title to the Secretary of State."

The Secretary then must provide "reasonable state-wide notice of having received the draft ballot title." ORS 250.067(1). Any person dissatisfied with the ballot title may file a petition for review with this court "[n]ot later than the 10th business day after the Attorney General certifies a ballot title to the Secretary of State." ORS 250.085(3)(a). Once the title is certified, the next step is the circulation of the petitions. After proponents have gathered signatures, the

Secretary of State then verifies the signatures to determine whether the proponents have gathered a sufficient number. ORS 250.105(1). ORS 250.105(1) provides:

"An initiative * * * petition relating to a state measure shall be filed with the Secretary of State for the purpose of verifying whether the petition contains the required number of signatures of electors. Each petition shall be verified in the order in which the petitions are filed with the secretary."

If the proponents have gathered a sufficient number of signatures, the Secretary then certifies the measure for placement on the ballot. Persons may challenge the Secretary of State's decision to certify or not to certify a measure. *See State ex rel Sajo v. Paulus,* 297 Or 646, 688 P2d 367 (1984). The submission process thus contains several discrete decisions by the Secretary, any one of which may be challenged. This court's decision in *Fidanque* aids our determination of when pre-election challenges to a measure under the Article IV, section 1(2)(d), one-subject-only rule should be brought.

In *Fidanque,* this court addressed a challenge to a measure based on the one-subject-only rule similar to petitioner's challenge here. *Fidanque* concerned a challenge through petition for writ of mandamus, and this court held that the challenge, brought 10 months after the measure was filed with the Secretary of State, was barred by laches. Although the majority's decision did not reach the issue of pre-election review, the analysis concerning the proper timing of a pre-election challenge is relevant here. We stated:

"[*I*]*f* the Plaintiff-Relators' allegation that a duty was created [under Article IV, section 1(2)(d)] is correct, that duty would have been breached when the prospective petition was *approved* under ORS 250.065(2) and was sent to the Attorney General for a ballot title. It is this determination that provides the first opportunity for the Secretary of State to exercise her official power with respect to the prospective petition. If, as the Plaintiff-Relators contend, there is a constitutional duty to act, it would arise at this time. It is in approving a prospective petition which did not comply with the alleged requirements of Article IV, section 1, that the Secretary of State's authority under the constitution and statutes first would be exceeded and her duty breached.

"* * * * *

"[I]t would be at the approval stage of the prospective

petition that the Secretary of State has the duty to determine if the requested action was constitutional." 297 Or at 715-16 (footnotes omitted; emphasis in original).

■     Although we did not reach the issue in *Fidanque,* we now hold that the Secretary of State's duty to certify compliance arises before election and that the Secretary of State must determine whether a measure complies with the one-subject-only rule when she approves a prospective petition.

    The Court of Appeals is reversed and the case is remanded to the circuit court.