## Bill SIZEMORE,
*Appellant,*

*v.*

## Phil KEISLING,
*Respondent,*

*and*

## Virginia MARKELL,
## Laurence Perry, and Susan C. Remmers,
*Intervenors-Respondents.*

## (98C-16691; CA A103686)

990 P2d 351

*See also*, 327 Or 71, 957 P2d 577.

Molly E. Hickman argued the cause for appellant. On the briefs was Gregory W. Byrne.

David Schuman, Deputy Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Christina L. Beatty-Walters, Assistant Attorney General.

Margaret S. Olney argued the cause for intervenors-respondents. On the brief were Paul B. Gamson and Smith, Gamson, Diamond & Olney.

Before Haselton, Presiding Judge, and Brewer, Judge, and Warren, Senior Judge.

BREWER, J.

## BREWER, J.

Plaintiff, an Oregon voter, appeals from a judgment dismissing as untimely this combined action for declaratory and injunctive relief and petition for judicial review under ORS 183.484. Plaintiff's complaint sought a declaration that Article XVII, section 1, of the Oregon Constitution,[1] required defendant Secretary of State to submit Ballot Measure 62 to Oregon voters in the November 1998 general election as a series of discrete measures for separate votes and sought an injunction ordering him to do so. We affirm.

The chief petitioners of Measure 62 filed the proposed initiative with defendant's office on January 29, 1998. On February 2, plaintiff objected in writing to the proposed initiative, contending that "this measure contains more than one subject, contains more than one proposed amendment, and is unconstitutional in its scope." On February 24, defendant ruled that the measure contained only one subject. He did not expressly address any other aspect of the constitutionality of Measure 62. Plaintiff received a copy of that ruling. On March 2, the Attorney General issued a certified ballot title for the proposed measure. ORS 250.067(2). On March 3, defendant issued a news release notifying the public that the proposed measure was approved for circulation. That notice also stated that defendant had determined that the proposed measure complied with the single subject provision of Article IV, section 1(2)(d), of the Oregon Constitution.

Plaintiff petitioned the Oregon Supreme Court for review of the Attorney General's certification of the ballot title. The Supreme Court dismissed plaintiff's petition. *Sizemore v. Myers*, 327 Or 71, 957 P2d 577 (1998). On May 6, the appellate judgment in that case became effective and the ballot title became final. ORS 250.067(3); ORS 250.085(5).

On July 13, defendant publicly announced his determination that the proposed measure had received a sufficient

---

[1] Section 1 provides, in part, that "[w]hen two or more amendments shall be submitted * * * to the voters of this state at the same election, they shall be so submitted that each amendment shall be voted on separately."

number of voter signatures to qualify for the November ballot. On July 20, plaintiff's attorney wrote to defendant, asking whether defendant intended to submit various portions of the measure to the voters for separate vote under Article XVII. Defendant responded in a letter dated July 28, stating that "I do not have the authority to alter Measure 62 in any manner."

Plaintiff filed this action in Marion County Circuit Court on July 30. The trial court subsequently allowed intervenors, the chief petitioners of Measure 62, to join as parties in the action. Defendant moved to dismiss, and intervenors moved to dismiss, or in the alternative for summary judgment, contending that plaintiff's action was untimely because it was filed more than 60 days after the Supreme Court's final approval of the ballot title. The trial court granted the motions to dismiss and plaintiff appeals. Measure 62 was approved by Oregon voters in the general election held in November 1998. The ultimate issue on appeal is a question of law: whether plaintiff's complaint was timely filed.

Before addressing the substance of the parties' arguments, we consider an issue that we have raised *sua sponte*; namely, the possible mootness of some or all of plaintiff's claims in view of the passage of Measure 62 by the voters in the 1998 general election. In response to our request for further authorities on that issue, the parties each have conceded that plaintiff's first and third claims are moot. We agree. In those claims, plaintiff sought, respectively, to enjoin the submission of the measure to the voters as a single measure and to reverse defendant's decision to submit the measure. Because the election has already been held, this court cannot grant meaningful relief on either of those claims. Accordingly, plaintiff's first and third claims are moot. *Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993).

Plaintiff's second claim, on the other hand, is not moot. That claim seeks a declaratory judgment that Measure 62 violates Article XVII, and that, if enacted as submitted, it is void. In so alleging, plaintiff asserts a continuing controversy that remains justiciable precisely because the measure was passed by the voters. *Kinney v. O'Connor*, 138 Or App

255, 257, 907 P2d 257 (1995), *modified* 139 Or App 75, 910 P2d 1161, *rev den* 323 Or 153 (1996). We turn, therefore, to the question of the timeliness of plaintiff's claim for declaratory relief.

In *Ellis v. Roberts*, 302 Or 6, 19, 725 P2d 886 (1986), the Supreme Court held that the time limit for pre-election challenges to decisions of the Secretary of State as to whether a proposed initiative violates the "one subject only" rule of Article IV, section 1(2)(d), of the Oregon Constitution, expires on the 60th day following final approval of the ballot title. As is the case here, the plaintiff in *Ellis* sought declaratory relief against the Secretary of State. *Id.* at 8. The court reasoned that the Secretary's decision in such matters is, in statutory terms, an "order in other than a contested case." ORS 183.310(5)(a); ORS 183.484. The court held that:

"A challenge to an order in other than a contested case—like appeals of all the Secretary of State's actions or failure to act with respect to the election laws, ORS 246.910(1)—is * * * [to] be brought within 60 days. ORS 183.484(2)." *Id.* at 18.

In *State ex rel Keisling v. Norblad*, 317 Or 615, 860 P2d 241 (1993), the Supreme Court addressed the timeliness of a pre-election "separate vote" challenge to the decision of the Secretary of State in a mandamus proceeding. Unlike the proposed measure in *Ellis*, the measure under review in *Norblad* originated from a legislative referral. The Supreme Court held that the triggering date for a challenge was the effective date of the legislation that directed the Secretary of State to place the measure on the ballot for a special election and that also provided a single ballot title for the measure. *Norblad* at 629. The court determined that a "reasonable time" for filing the challenge ended no later than three days after the date on which the legislature contemplated that the measure, along with its ballot title, would be certified to the counties. Under the facts of *Norblad*, that time ended 37 days following the effective date of the legislation. *Id.* at 632.

In *Norblad*, the court distinguished *Ellis* as follows:

"The court did *not* say that, treating the action in [*Ellis*] as a petition for judicial review of an order in other than a contested case, such a petition always would be timely. To the

contrary, it is clear from that opinion that the requirement of 'timeliness' is a principle derived from the fundamental need for the orderly conduct of the election process. *Ellis* thus stood for the proposition that *the maximum amount* of time that the complaining parties in that case had in which to file their challenge was 60 days." *Id.* at 628 (emphasis in original).

Thus, *Norblad* suggests that, while a separate vote challenge is—like any other challenge to the Secretary of State's action or failure to act with respect to the election laws—subject to the maximum limit of 60 days, the temporal exigencies of a given pre-election challenge may require a shorter deadline.

In this case, none of the parties contends that a reasonable time for a challenge to defendant's decision not to disaggregate the provisions of Measure 62 for separate vote is less than the 60 days permitted under ORS 183.484. However, plaintiff argues that a reasonable time is not limited to 60 days. We disagree.

As we have already said, we interpret *Ellis*, in light of *Norblad*, to adopt a 60-day maximum limit for pre-election challenges to the action or inaction of the Secretary of State in his various functions with respect to the election laws. The decision whether to submit portions of an initiative measure for separate vote is clearly such a function. The court adopted the 60-day time limit because such pre-election claims, however denominated, are essentially administrative reviews under ORS 183.484. Measured in that light, plaintiff's claim for declaratory judgment was not timely filed.

The ballot title for Measure 62 was certified to defendant by the Attorney General pursuant to ORS 250.067(2). Defendant next issued a news release on March 3, announcing the certification of the ballot title. ORS 250.085. Plaintiff then filed in the Supreme Court a petition for review of the certified ballot title. The final appellate judgment dismissing that action became effective on May 6. On that date, at the very latest, the ballot title for Measure 62 was finally approved and no other ballot title could be submitted to the voters at the election. ORS 250.067(3).[2] Plaintiff filed this

---

[2] ORS 250.067(3) provides that "[u]nless the Supreme Court certifies a different ballot title, the ballot title provided by the Attorney General under subsection

action 85 days later, well beyond the maximum limit provided by ORS 183.484 and approved in *Ellis*.

■ Plaintiff nonetheless contends that the 60-day time limit should not be applied in this case, because defendant did not respond to the separate vote objection plaintiff made on February 2. As a result, plaintiff asserts that he was uncertain about defendant's position on that issue until he received defendant's July 28 letter.

While plaintiff's assertion may be true, there was no impediment to a legal challenge to defendant's failure to expressly address that issue at either the first or second step of the submission process. *Ellis*, 302 Or at 18. Plaintiff knew that defendant had failed to address the separate-vote objection explicitly when he received defendant's February 24 ruling. Plaintiff also knew that defendant had not expressly ruled on the separate vote objection when the ballot title was certified by the Attorney General on March 2 and circulated by defendant on March 3, and when it was finally certified by the Supreme Court on May 6. ORS 250.085(5). Therefore, plaintiff is mistaken in contending that he had no reasonable opportunity to commence this action until after July 28. Plaintiff knew sufficient facts to determine that defendant's pre-election constitutional evaluation of Measure 62 was complete, whether by action or inaction, by no later than May 6.[3] Therefore, in order to be timely, plaintiff's pre-election challenge must have been filed by no later than July 6.

Our conclusion is reinforced by the Supreme Court's decision in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998). In *Armatta*, the court extensively analyzed the separate vote requirement in the context of a constitutional challenge to Ballot Measure 40. The court focused on the portion

---

(2) of this section shall be the title printed in the voters' pamphlet and on the ballot."

[3] The court stated in *Ellis* that the period of reasonable time commences when the Secretary of State determines that the use of the initiative power in a particular instance is authorized by the constitution. *Id*. at 17. In the case of Measure 62, that determination was made when defendant issued his February 24 ruling. However, the concluding paragraph of the opinion states that the period commences on final approval of the ballot title. *Id*. at 19. We need not determine which of those two dates applies in this case, because this action was commenced more than 60 days after the later of the two.

of Article XVII, section 1, that provides that two or more amendments to the constitution "shall be submitted *in the manner aforesaid* to the voters." *Id.* at 257. The court stated:

> "That particular text establishes, at a minimum, that the separate-vote requirement prevents the combining of several proposed amendments, which have been labeled from their inception as separate amendments, into one proposed amendment subject to a single vote. *That is, all proposed amendments must be submitted to the voters in the same form in which they* passed the legislature or *were circulated by initiative petition." Id.* at 263 (emphasis added).

The emphasized portion of the foregoing statement, although perhaps not essential to the court's decision, is an entirely sensible and predictable construction of Article XVII, section 1. Final approval of the ballot title for Measure 62 facilitated the circulation of the initiative for voter approval. The voters who signed the initiative petition as circulated approved a specific measure for placement on the ballot. With respect to Measure 62, the approval process was completed by July 13—17 days before this action was commenced. At that point in the submission process, Article XVII, section 1, prohibited any executive officer from changing that legislative action. Thus, *Armatta* demonstrates, in the context of this case, that a pre-election challenge filed more than 60 days following final approval of an initiative ballot title would unreasonably interfere with the orderly progress of the initiative submission process.

One final question remains for consideration in light of the parties' responses to our request for additional authorities: whether the fact that plaintiff's claim for declaratory judgment remains justiciable permits it to survive unencumbered by the 60-day limit applicable to pre-election challenges as a post-election challenge to the constitutionality of Measure 62. We conclude that it does not. Statutes of limitation routinely bar otherwise justiciable claims. The function of time limits is to promote the finality of legally significant acts and omissions against the contingency of future claims. *State ex rel Fidanque v. Paulus*, 297 Or 711, 718, 688 P2d 1303 (1984). The requirement that claims remain justiciable in order to merit decision, on the other hand, ensures that the courts do not render advisory opinions in the absence of a

genuine controversy. *Brumnett*, 315 Or at 405. Because the principles of time-bar and justiciability serve distinct jurisprudential functions, the fact that plaintiff's claim for declaratory relief remains justiciable following the 1998 election does not justify a post-election time limit for its commencement.

Moreover, the ongoing justiciability of plaintiff's claim following passage of the initiative did not convert the claim to a post-election challenge. In fact, plaintiff could not have filed a post-election challenge to the constitutionality of Measure 62 until, at the earliest, the date that defendant certified that the measure was adopted by the voters. ORS 250.044(1)(b). A post-election challenge under ORS 250.044 must be filed within 180 days after such certification. *Id.* It is clear that the statutory post-election procedure is entirely separate and distinct from the procedure that has been judicially established for pre-election challenges. There is no logical reason to assign a post-election time limit to plaintiff's claim merely because its filing might have been delayed until after the election outcome was known. We decline to blur the distinction between the two types of challenges by establishing a rule that would retroactively change the time limit for filing declaratory relief claims in mid-litigation, depending on the election results of the challenged submission.[4]

In conclusion, we hold that plaintiff was required to file a pre-election action challenging Measure 62 on separate-vote grounds under Article XVII, section 1, of the Oregon Constitution, within a reasonable time, at the latest date, 60 days after final certification of the ballot title by appellate

---

[4] We note, in passing, a further difficulty with the possible treatment of plaintiff's claim as a post-election challenge; that is, selection of an appropriate defendant. ORS 250.044 does not identify the defendant who should be sued in such an action. However, it is not unreasonable to conclude that such an action should be brought against the Governor, as chief officer of the executive branch of Oregon's government, rather than the Secretary of State.

Although commenced before the effective date of ORS 250.044, the post-election challenge in *Armatta* was filed against both the Governor and the Secretary of State. However, only the claim against the Governor was considered on appeal, because the plaintiffs did not challenge the trial court's dismissal of their claims against the Secretary of State as time-barred. 327 Or at 253. Because of our disposition of this case, we need not decide the identity of the proper defendant in a post-election challenge to the constitutionality of an initiative measure.

judgment on May 6, 1998. Because this action was not filed within that period, the trial court did not err in dismissing it as untimely.

Appeal from judgment on first and third claims dismissed as moot; otherwise affirmed.