212                    June 12, 2024                    No. 399

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jonathan POLONSKY,
an individual Washington County elector,
*Plaintiff-Appellant,*

*v.*

WASHINGTON COUNTY,
an Oregon home rule county, and
Mickie Kawai,
in her official capacity as Election Officer for
Washington County,
*Defendants-Respondents.*

Washington County Circuit Court
22CV12904; A178777

Theodore E. Sims, Judge.

Argued and submitted November 15, 2023.

Nathan R. Rietmann argued the cause for appellant. Also on the opening brief was Rietmann Law, P.C. Also on the reply brief were Daemie M. Kim and Rietmann & Kim, LLP.

Johnathan E. Mansfield argued the cause for respondents. Also on the brief were Jason Bush and John Mansfield.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

This action pertains to Washington County Ordinance 878, which, among other things, prohibits the sale of flavored tobacco products. Plaintiff gathered enough signatures for Ordinance 878 to be referred to the county's voters for approval, under Washington County Charter, ch V, § 50(h). A month before the election, plaintiff filed this action against defendants Washington County and Elections Officer Mickie Kawai, asserting that they were not properly referring the ordinance to voters for "approval," having instead drafted a measure asking voters whether it should be "repealed." The trial court granted summary judgment for defendants on the merits. The court did not address the timeliness of the action, which was another asserted basis for summary judgment.

On appeal, we conclude that this action was filed too late and affirm the summary judgment on that basis. Our analysis has two components. First, we conclude that plaintiff could bring this action under ORS 246.910, as he did, rather than bringing an action under ORS 250.195, as defendants contend that he should have. Second, recognizing that an action under ORS 246.910 must be brought within a "reasonable time," *Ellis v. Roberts*, 302 Or 6, 725 P2d 886 (1986), we conclude that a reasonable time in this case was within 60 days from publication of the ballot title. Because this action was filed beyond that deadline, it was filed too late. Accordingly, we affirm.

## FACTS

The following facts were stipulated, or are otherwise undisputed, for purposes of summary judgment.

On November 2, 2021, the Washington County Board of Commissioners adopted Ordinance 878, which prohibits the sale of flavored tobacco products and otherwise regulates tobacco and nicotine products.

On November 17, 2021, plaintiff filed a prospective petition regarding Ordinance 878 with the Washington County Elections Division. *See* ORS 250.165 (regarding prospective petitions).

Upon receiving the prospective petition, the county prepared a ballot title, sent it to plaintiff as the chief petitioner, and published it in the newspaper on November 29, 2021. *See* ORS 250.175 - 250.185 (regarding preparation of ballot titles). The ballot title read in full:

"**CAPTION**: Referendum on Washington County Ordinance 878, Regulating Tobacco Products.

"**QUESTION**:  Should ordinance 878, prohibiting flavored tobacco products, machine sales, coupons, discounts, and movable sales of tobacco products, be repealed?

"**STATEMENT**: This referendum seeks to repeal Washington County Ordinance 878. The proposed referendum seeks to repeal prohibitions under Washington County Ordinance 878 related to tobacco products including the removal of prohibitions:

"• against the sale of flavored tobacco products;

"• against the sale of tobacco products from machines or other devices without a human vendor present;

"• on the price promotion of tobacco product sales through the use of coupons or price discounts;

"• on the sale of tobacco products in packages containing fewer than 20 cigarettes; and

"• on the sale of tobacco products from kiosks, trucks, vans, automobiles or other vehicles or transportable shelters."

(Boldface in original.)

By January 27, 2022, plaintiff had collected enough signatures for Ordinance 878 to be referred to the voters on the May 2022 ballot.

On March 11, 2022, the Elections Division assigned a number to the referendum, making it Measure 34-314 (2022). On March 16, 2022, the Elections Division provided to plaintiff, and published on its website, a copy of the explanatory statement to be included in the voters' pamphlet. At that point, plaintiff realized that he disagreed with the measure's framing, which asked voters whether to "repeal" Ordinance 878, instead of whether to "approve" it. Plaintiff

had been urging voters to vote "no" on approving Ordinance 878, rather than to vote "yes" on repealing Ordinance 878.

Plaintiff hired a lawyer, who sent a letter to the county on March 24, 2022. The parties met on March 28, 2022, but nothing came of that meeting.

On April 18, 2022, which was 29 days before the election, plaintiff filed this action. Plaintiff alleged that Mickie Kawai, in her capacity as Elections Officer for Washington County, had "failed to place Ordinance 878 before voters for approval at the May 17, 2022 election" and had unlawfully placed Measure 34-314 on the ballot for the May 17, 2022, election. Plaintiff asserted a claim under ORS 246.910, as a person adversely affected by Kawai's "act or failure to act" under election law. He also asserted a claim under the Declaratory Judgments Act, seeking a declaration that Measure 34-314 did not place Ordinance 878 before the county's voters for approval, a declaration that Measure 34-314 was not lawfully referred, and an injunction preventing defendants "from preparing abstracts or certifying any votes cast on Measure 34-314."

The parties filed cross-motions for summary judgment. Plaintiff argued that defendants had a legal obligation to refer Ordinance 878 to voters for "approval" and that instead referring the question whether to "repeal" Ordinance 878 violated both the Washington County Charter § 50(h)—which provides that "[a]n ordinance referred by action of the voters shall become effective when approved by a majority of the voters"[1]—and the Oregon Constitution. Defendants argued that plaintiff's action was untimely, specifically that plaintiff needed to bring a ballot-title challenge under ORS 250.195, which has a seven-day deadline, and that plaintiff had waived the right to challenge Measure 34-314 by failing

---

[1] In full, Washington County Charter, ch V, § 50(h) states:

"No provision of this Charter shall abrogate the right of the people of the County to exercise the initiative and referendum with respect to any ordinance. If a proper referral petition containing the appropriate number of valid signatures is filed within 90 days after the adoption of any ordinance by the Board, the ordinance shall become inoperative and the effective date shall be suspended. An ordinance referred by action of the voters shall become effective when approved by a majority of the voters."

to follow that procedure.[2] In the alternative, defendants argued on the merits that Measure 34-314 complied with ORS 250.035, which sets forth requirements for the form of ballot titles, and that the authorities cited by plaintiff did not require the ballot measure to be phrased in terms of voter "approval" of Ordinance 878.

On the timeliness issue, plaintiff responded that his claim sought post-election relief and that the pre-election deadlines cited by defendants therefore did not apply.

The trial court granted summary judgment for defendants. The court did not address the timeliness of plaintiff's action. Instead, it ruled on the merits that the county lawfully referred Ordinance 878 to the voters for approval. Plaintiff appeals.

## ANALYSIS

We review summary judgment rulings for errors of law. *Beneficial Oregon, Inc. v. Bivins*, 313 Or App 275, 277, 496 P3d 1104 (2021). Here, defendants moved for summary judgment on two bases—timeliness and the merits. We choose to resolve this case based on the timeliness issue. Although the trial court did not rule on it, the timeliness issue was presented to the trial court, the record was fully developed, and the question presented is purely one of law, requiring no factfinding or exercise of discretion, so it is appropriate for us to decide on appeal. *Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022).

The first question is whether plaintiff's action had to be brought as a ballot-title challenge under ORS 250.195, as defendants contend, or whether it was permissibly brought under ORS 246.910, as plaintiff contends.

ORS 250.195 provides a procedure for challenging a county ballot title, stating in relevant part:

---

[2] Defendants also cited Washington County Code 2.26.140, which, as to local measures, incorporates state law procedure for ballot-title challenges and creates a procedure to challenge explanatory statements. That additional authority for defendants' argument is not material to our analysis, so we focus on ORS 250.195.

"(1)  Any elector dissatisfied with a ballot title filed with the county clerk by the district attorney or the county governing body, may petition the circuit court of the judicial district in which the county is located seeking a different title and stating the reasons the title filed with the court is insufficient, not concise or unfair. The petition shall name as respondent either the district attorney or county governing body, depending on who prepared the ballot title, and must be filed not later than the seventh business day after the title is filed with the county clerk. The court shall review the title and measure to be initiated or referred, hear arguments, if any, and certify to the county clerk a title for the measure which meets the requirements of ORS 250.035.

"* * * * *

"(3)  The review by the circuit court shall be the first and final review, and shall be conducted expeditiously to insure the orderly and timely circulation of the petition or conduct of the election at which the measure is to be submitted to the electors."

Meanwhile, ORS 246.910 provides a procedure to challenge any act or failure to act of a state, county, or city official under any election law:

"(1)  A person adversely affected by any act or failure to act by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law, or by any order, rule, directive or instruction made by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law, may appeal therefrom to the circuit court for the county in which the act or failure to act occurred or in which the order, rule, directive or instruction was made.

"(2)  An appeal described in subsection (1) of this section of an order of the Secretary of State approving or disapproving a state initiative petition for circulation for the purpose of obtaining signatures of electors must be filed within 60 days following the date the order is served.

"(3)  Any party to the appeal proceedings in the circuit court under subsection (1) of this section may appeal from the decision of the circuit court to the Court of Appeals.

"(4)   The circuit courts and Court of Appeals, in their discretion, may give precedence on their dockets to appeals under this section as the circumstances may require.

"(5)   The remedy provided in this section is cumulative and does not exclude any other remedy against any act or failure to act by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law or against any order, rule, directive or instruction made by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law."

There are obvious differences between ORS 250.195 and ORS 246.910. ORS 250.195 provides a procedure to challenge only a ballot title, imposes a seven-day deadline, and makes the circuit court the final decisionmaker. By contrast, ORS 246.910 applies to "any act or failure to act by the Secretary of State, a county clerk, a city elections officer or any other county, city or district official under any election law," as well as to any order, rule, directive, or instruction made by any of those individuals; does not contain any express deadline to file an action, except as to state initiative petitions; and allows for appellate review.

If plaintiff were challenging only the ballot title—as "insufficient, not concise or unfair," ORS 250.195—he presumably would have needed to bring a ballot-title challenge under ORS 250.195. *See Ecumenical Ministries v. Paulus*, 298 Or 62, 64, 67, 688 P2d 1339 (1984) (holding that, where the plaintiffs sought to prevent the Secretary of State from certifying initiative Ballot Measure 4 for the November 1984 general election, and the gist of their complaint "was that the ballot title prepared for the initiative measure was inaccurate, insufficient and unfair," the exclusive procedure to resolve that claim was in ORS 250.085[3]). Plaintiff's challenge goes beyond the ballot title, however, to the content of the measure itself, specifically that it is a measure to repeal Ordinance 878, instead of a measure to approve Ordinance 878. Of course, as plaintiff acknowledges, the ballot title is

---

[3] ORS 250.085 provides the procedure to challenge the ballot title for a state measure, while ORS 250.195 provides the procedure to challenge the ballot title for a county measure. The reasoning of *Ecumenical Ministries* would seem to apply equally to county ballot-title challenges under ORS 250.195.

"*part* of the problem." Given the nature of a ballot title, one would expect any alleged fundamental flaw with a ballot measure to be reflected, to some degree, in the ballot title. It is also true, theoretically, that had plaintiff challenged the ballot title, the county might have rewritten the measure itself and, by extension, the ballot title. But we disagree with defendants that plaintiff's only option was to bring a ballot-title challenge under ORS 250.195. Plaintiff's claim goes beyond the ballot title to the content of the measure itself, so it was permissible for him to proceed under ORS 246.910.

Having concluded that plaintiff could bring this action under ORS 246.910, as he did, the next question is whether there was any deadline for him to do so. The statute on its face does not state any deadline to challenge official actions relating to a county ballot measure. The only stated deadline is a 60-day deadline to challenge "an order of the Secretary of State approving or disapproving a state initiative petition for circulation for the purpose of obtaining signatures of electors." ORS 246.910(2). The legislature added that deadline in 2005, to codify the Supreme Court's holding in *Ellis*, a case that we will discuss shortly—*see* Or Laws 2005, ch 797, § 26; Exhibit R, House Committee on Election and Rules, HB 2167-A, June 14, 2005 ("This amendment codifies 1980's-era Oregon Supreme Court opinions, which allowed 60 days from ballot title certification to appeal and the Secretary of State's rule on procedural constitutional compliance review.")—but it applies only to state initiative petitions.

The fact that ORS 246.910 does not provide an express deadline to challenge official actions relating to a county ballot measure is not the end of the analysis though. Defendants argue that, under *Ellis*, such an action must be brought within a reasonable time, specifically 60 days. Plaintiff disagrees, maintaining that no deadline applies. Defendants have the better argument, under *Ellis*.

In *Ellis*, the plaintiffs were registered voters who brought an action against the Secretary of State and others under ORS 246.910 and the Declaratory Judgments Act, after the Secretary of State certified Ballot Measure 11

(1986) for placement on the 1986 general election ballot. 302 Or at 8. The plaintiffs claimed that Measure 11 violated the single-subject requirement in Article IV, section 1(2)(d), of the Oregon Constitution, and that the Secretary of State's certification was therefore unlawful. *Id.* They sought injunctive and other relief to keep Measure 11 off the ballot. *Id.* In response, the defendants asserted the affirmative defense of laches. *Id.* at 10. Recall that, in 1986, ORS 246.910 contained no deadlines whatsoever—as previously noted, the deadline that now exists in ORS 246.910(2) was added nearly 20 years later in 2005—so the defendants used laches as their basis to argue that the action was brought too late.

The parties cross-moved for summary judgment on the laches defense. *Id.* The trial court ruled that the plaintiffs were sophisticated parties who should have brought their action sooner and were therefore barred by laches. *Id.* at 11. The plaintiffs appealed, and we certified the case to the Supreme Court, which accepted it. *Id.* at 8. The Supreme Court made a series of holdings, ultimately affirming the trial court's dismissal of the plaintiffs' action, but on different grounds from the trial court.

First, the court held that the doctrine of laches was not appropriate to apply to an action under ORS 246.910. *Id.* at 11 ("We hold that laches should not be utilized in this way in actions under ORS 246.910(1) or under a parallel theory advanced under the declaratory judgments act.").

Next, the Supreme Court addressed the defendants' argument that, absent any statutory deadline to bring an action under ORS 246.910, the court should essentially create one, requiring an action to be brought within a "reasonable time." *Id.* at 13. The court agreed. *Id.* Although it expressed some discomfort with filling a "legislative vacuum," the court concluded that, "[i]n the absence of legislation," it was "required to provide some judicial framework until the legislature provides a statutory one." *Id.* The court ultimately agreed with the defendants that an action under ORS 246.910 must be brought within a "reasonable time." *Id.* at 13-17 (analyzing that issue). In reaching that conclusion, the court relied in part on the fact that, if "these actions are not brought within a reasonable time after they first could

have been brought, meaningful judicial review will be diffi-
cult, if not impossible." *Id.* at 17.

The Supreme Court then considered when the time
period to bring an action under ORS 246.910 should start
running. *Id.* For the type of challenge brought in *Ellis*, the
court concluded that it started running when the "prelimi-
nary petitions for a ballot measure ha[d] first been approved
by the Secretary of State and submitted to the Attorney
General for a ballot title." *Id.* The court explained:

> "There is a season for each kind of challenge to the Secretary
> of State's administration of the election laws, whether as
> to the ballot title, the signature gathering process or con-
> stitutional evaluation. ORS 250.045(1); 250.065(2), (3) and
> (4). The Secretary of State makes—or fails to make—the
> constitutional decision at the outset. Later actions, such as
> acceptance of a ballot title from the Attorney General, veri-
> fication of signatures and certification, do not call for her to
> reassess the original constitutional evaluation that is sup-
> posed to be the predicate for placing the entire initiative
> machinery in operation. It is either done or not at this ini-
> tial stage. The period of reasonable time commences then."

*Id.* (some internal citations omitted).

Finally, the court decided how long a time was "rea-
sonable" to bring the action, and it held that a "reasonable
time" for the type of challenge in *Ellis* was 60 days. *Id.* at 18.
The court looked to "other expressions of legislative policy"—
particularly a 60-day deadline in the Oregon Administrative
Procedures Act, and a 30-day deadline applicable in some
mandamus proceedings—to arrive at that deadline. *Id.*
Thus, in the end, the *Ellis* court held "that the reasonable
time for challenging the decision of the Secretary of State—
including her failure to decide—whether a proposed initiative
violates the 'one subject only' rule of Oregon Constitution,
Article IV, section 1(2)(d), expires on the 60th day following
final approval of the ballot title." *Id.* at 19. Because the plain-
tiffs had not filed their action until 11 months after final
approval of the ballot title, the action was untimely, and the
court affirmed the dismissal of the plaintiffs' claims. *Id.*

Returning to the present case, we agree with defen-
dants that this action had to be filed within a "reasonable

time" under *Ellis*. That aspect of *Ellis*'s holding applies to any action under ORS 246.910. *See Ellis*, 302 Or at 13-17 (reasoning for holding); *State ex rel Keisling v. Norblad*, 317 Or 615, 629, 860 P2d 241 (1993) (recognizing that *Ellis* "established a methodology for determining the time period within which a court is permitted to consider a pre-election challenge to the election process in an action for which there is no statutorily prescribed deadline for initiating the action").

Seeking to avoid *Ellis*, plaintiff argues that this action amounts to a *post*-election challenge to certification of the vote on Measure 34-314. We disagree. Plaintiff filed this action before the election. Moreover, the gist of his complaint is that Kawai, in her capacity as Elections Officer for Washington County, unlawfully failed to act in one regard—by failing to place Ordinance 878 before voters for approval in the May 2022 election—and unlawfully acted in another regard—by placing Measure 34-314 on the ballot instead. Having chosen to file an action under ORS 246.910, challenging a county election official's pre-election actions or failures to act, plaintiff cannot now try to recast his action as a post-election challenge.

The situation is a variation on that in *League of Oregon Cities v. State of Oregon*, 334 Or 645, 56 P3d 892 (2002). There, the plaintiffs, who were real property owners, brought an action under ORS 246.910 and the Declaratory Judgments Act, seeking to invalidate Ballot Measure 7 (2000), related to real property regulation. *Id*. at 649. The plaintiffs filed the action more than three weeks after the election, while the votes were still being counted. *Id*. They contended that Measure 7 violated the separate-vote requirement of the Oregon Constitution. *Id*. Although the complaint identified four distinct acts by the Secretary of State, all of the parties agreed that "the 'act' at the heart of this challenge" was "the Secretary of State's constitutional evaluation of the proposed initiative petition that became Measure 7." *Id*. at 655.

Addressing timeliness as a jurisdictional issue, the Supreme Court relied on *Ellis* to conclude that the action was brought too late to be a valid action under ORS 246.910.

*Id*. at 656-57. The court rejected the plaintiffs' effort to avoid *Ellis* by casting their action as a post-election challenge. *Id*. at 657 n 14. Although the action was brought three weeks after the election, the court explained, "the very *nature* of their challenge is a pre-election challenge to a pre-election Secretary of State decision." *Id*. at 656 (emphasis in original); *see also id*. at 657 n 14 ("Both the challenge at issue in *Ellis* and the challenge at issue here are, at bottom, challenges to the Secretary of State's pre-election constitutional evaluation of a proposed initiative petition.").

Here, plaintiff actually filed this action before the election and, even if he had not, its very nature is a pre-election challenge to a county election official's pre-election actions or failures to act. Accordingly, under *Ellis* and *League of Oregon Cities*, plaintiff had to bring the action within a "reasonable time."[4]

What, then, was a reasonable time to bring this action? Since *Ellis* was decided, the legislature has added one statutorily prescribed deadline—in 2005, it codified *Ellis*'s 60-day deadline to challenge the Secretary of State's approval or disapproval of a state initiative petition for circulation. *See* Or Laws 2005, ch 797, § 26 (adding ORS 246.910(2)). Otherwise, the legislature has not seen a need to fill the "legislative vacuum" noted in *Ellis*, 302 Or at 13, leaving it to the appellate courts to decide how long citizens have to file an action under ORS 246.910 to challenge any of the many other types of actions, inactions, orders, rules, directives, and instructions that may be challenged under ORS 246.910.

The Supreme Court has evaluated reasonableness for purposes of ORS 246.910 on a case-by-case basis, looking to "other expressions of legislative policy" to decide what is reasonable for a particular type of challenge. *Ellis*, 302 Or

---

[4] Plaintiff's declaratory judgment claim essentially tracks his ORS 246.910 claim and is subject to the same time limitation. *See Sizemore v. Keisling*, 164 Or App 80, 82, 87-88, 990 P2d 351 (1999), *rev den*, 330 Or 138 (2000) (applying the 60-day time limitation from *Ellis* to all claims in a "combined action for declaratory and injunctive relief and petition for judicial review under ORS 183.484" and explaining that, although the declaratory judgment claim remained justiciable after the election, that did "not justify a post-election time limit for its commencement," and "the ongoing justiciability of plaintiff's claim following passage of the initiative did not convert the claim to a post-election challenge").

at 18. The court held in *State ex rel Bunn v. Roberts*, 302 Or 72, 82, 726 P2d 925 (1986), that five days was a reasonable time to bring an action under ORS 246.910 to challenge the Secretary of State's determination that Ballot Measure 6 (1986), relating to public funding for abortions, required a fiscal impact statement. The court held in *Norblad*, 317 Or at 632, that three days was a reasonable time to bring an action under ORS 246.910 to challenge the constitutionality of a ballot measure referred by the legislature.

Here, we conclude that a reasonable time to bring an action under ORS 246.910 challenging Kawai's pre-election actions or failures to act regarding Ordinance 878 and Measure 34-314 was 60 days. The situation is sufficiently analogous to that in *Ellis* to warrant a similar timeline—which, we observe, is the longest timeline that has been imposed in any case under ORS 246.910 in the nearly four decades since *Ellis* was decided. We also consider relevant the 60-day deadline to petition for a writ of review under ORS 34.030, as that statutory procedure bears some similarity to ORS 246.910. *See* ORS 34.010 - 34.100 (writ of review proceedings).

As the Supreme Court intimated in *Ellis*, 302 Or at 13, it would be preferable that the legislature set the deadlines to raise different types of challenges in an action under ORS 246.910. Deciding what deadlines apply to a statutory procedure is normally a legislative act, rather than a judicial one. *See generally* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"). But *Ellis* is unequivocal that, with respect to ORS 246.910, it falls on the appellate courts to fill the "legislative vacuum" in the statute, until such time as the legislature sees fit to do so, which it has not yet. *Ellis*, 302 Or at 13. Here, we settle on 60 days. As the Supreme Court put it in *Ellis*, "While many answers can be given—and, again, we note that the legislature is free to do as it wishes—we think the answer is 60 days." *Id*. at 18.

The final issue is when the 60-day deadline began to run. We conclude that it began running on November

29, 2021, when the ballot title published. The ballot title question was, "Should ordinance 878, prohibiting flavored tobacco products, machine sales, coupons, discounts, and movable sales of tobacco products, be repealed?" The ballot title statement provided, "This referendum seeks to repeal Washington County Ordinance 878. The proposed referendum seeks to repeal prohibitions under Washington County Ordinance 878 related to tobacco products including the removal of prohibitions [thereafter listed]." The publication of the ballot title was the initial act at the heart of plaintiff's challenge, as that was the point in time when Kawai committed to presenting voters with a measure proposing the "repeal" of Ordinance 878, instead of one seeking "approval" of Ordinance 878. *Cf. Ellis*, 302 Or at 17 (explaining that the Secretary of State's determination of Measure 11's constitutionality was "either done or not at th[e] initial stage" when the ballot title was certified, so that was when the time to bring an action under ORS 246.910 began to run). That decision was the "predicate for placing the entire * * * machinery in operation" and therefore was the starting point for a "reasonable time" to bring this pre-election challenge under ORS 246.910. *Id.*

It follows that plaintiff's action was filed too late. The county published the ballot title on November 29, 2021. Plaintiff filed this action nearly five months later on April 18, 2022. We therefore affirm the trial court's grant of summary judgment for defendants, albeit on an alternative basis to the one on which the trial court ruled.[5]

---

[5] We reiterate that this action was a pre-election challenge to Measure 34-314. Some challenges may be brought only pre-election. *See, e.g.*, *State v. Montez*, 309 Or 564, 602-03, 789 P2d 1352 (1990) (claim that measures failed to comply with financial-statement requirements had to be raised pre-election); *Ecumenical Ministries*, 298 Or at 67 (recognizing the pre-election procedure in ORS 250.085 as the exclusive means to challenge a state ballot title as inaccurate, insufficient, or unfair). Some challenges may be brought only post-election. *See, e.g.*, *Beal v. City of Gresham*, 166 Or App 528, 533, 998 P2d 237 (2000) (a claim "that the substance of [a] measure violates a constitutional provision, such as Article I, section 8," must be brought after the measure is enacted, because before then a judicial decision "would be purely advisory"). Some challenges may be brought either pre-election or post-election. *See, e.g.*, *Sizemore*, 164 Or App at 88 & n 4 (recognizing the existence of different pre-election and post-election procedures to challenge an initiative as violating the constitutional separate-vote requirement). Here, we express no opinion on the prospect of a post-election challenge to Ordinance 878 or Measure 34-314 or who would have standing to bring

Affirmed.

---

one. *See Beal*, 166 Or App at 535 (noting the distinction between an "untimely pre-enactment challenge and the separate question whether a party could file a post-enactment challenge to an initiated law"); *League of Oregon Cities*, 334 Or at 653-54 (recognizing that stricter standing requirements apply to a declaratory judgment claim than a claim under ORS 246.910). This case involves a pre-election challenge, and we decide only the case before us.